IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL MERCANTI, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| PHILADELPHIA MEDIA | : | Case No. 2:20-cv-6387 |
| NETWORK (NEWSPAPERS), LLC, | : | |
| and THE PHILADELPHIA | : | |
| FOUNDATION, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## **COMPLAINT**

Plaintiff, Michael Mercanti, hereby brings this Complaint for age discrimination against Respondent, Philadelphia Media Network (Newspapers), LLC ("PMN") and The Philadelphia Foundation ("TPF").

1.      Defendant, Philadelphia Media Network (Newspapers), LLC ("PMN") publishes newspapers, the Philadelphia Inquirer and the Philadelphia Daily News, and operates the website, www.philly.com, and maintains its headquarters at 801 Market Street, Philadelphia, PA 19107.

2.      At all times material hereto, PMN conducted business in Philadelphia, Pennsylvania, has been engaged in interstate commerce and employed more than 20 or more employees for each working day during each of 20 or more calendar workweeks in 2016, 2017, 2018, 2019 and 2020.

3.      Defendant, The Philadelphia Foundation owns and controls PMN and

is headquartered at 1835 Market Street, Philadelphia, PA 19103.

4.      Plaintiff, Michael Mercanti, is an adult individual whose date of birth

is August 5, 1952.

5.      Mr. Mercanti had been employed by the Defendants since they

obtained ownership of the Philadelphia Inquirer and Daily News in around 2006.

6.      He had worked for the Inquirer and/or Daily News for more than 35

years establishing an illustrious, award winning career before he was discharged

from his employment with the Defendants on January 31, 2019 and replaced by an

individual approximately 26 years younger,

7.      Mercanti started his career as a photojournalist at the Atlantic City

Press in 1979.  He was hired by the Philadelphia Journal and worked there for six

months in1982 until it folded in December of that year.

8.      Mercanti joined the photo staff of the Philadelphia Daily News in

January 1983 and, during those years, was a regular winner of annual state and

national awards and his work regularly appeared in Year in News publications.

During this time, Michael was named Northeastern US Photographer of the Year,

won a National Headliners Award and his award winning Philadelphia Eagles'

photograph hangs in the Pro Football Hall of Fame in Canton, Ohio.

9.     In 1993, Mercanti was named Daily News Executive Photo Editor managing a staff of more than ten photographers and photo editors.  He and his staff continued to win awards.

10.     Mercanti photo-edited and was the primary designer on five high profile books produced by the newspaper on the Super Bowl, the Phillies World Series win, the Pope's visit to Philadelphia, The Photo History of the Spectrum and the Greatest Moments in Sports History.

11.     In 2010, he was named Director of Photography for both the Inquirer and Daily News to coordinate still and video coverage. With these added photographers and photo editors, the joint-department was the first in the newsroom to merge staffs from the Inquirer and the Daily News seamlessly, efficiently and effectively.  The rest of the newsroom followed suit years later.

12.     Under Mercanti's leadership, the photography department continued to be one of the best large newspaper photography staffs in the country.

13.     Mercanti was recognized as a major contributor to two Pulitzer Prize wins at both, the Inquirer and the Daily News.

14.     He coordinated all visual coverage for the Daily News' "Tainted Justice" award in 2010 and the Inquirer's "Assault on Learning" win in 2012.

15.     Mercanti was discharged from his position with Respondents on January 31, 2019 because of his age.

16.     He was replaced by a woman, Danese Kenon, who is approximately 27 years younger than he is.

17.     Mercanti was qualified for the position from which he was discharged by Defendants.

18.     According to the Defendants, Mercanti was fired and Ms. Kenon was hired to "manage the award-winning photo staff."  This is exactly what Mercanti had been doing, and doing successfully.

19.     Since he had been a successful award winning photojournalist, Mercanti was better able to understand and address the difficulty of the job and nurture a creative environment for the staff to succeed.

20.     Mercanti matched the staff members' visual talents to certain assignments.  In this way, he promoted their successes and achievements.

21.     Because of this skill, Mercanti actually produced the exceptional award winning staff that Ms. Kenon was hired to manage instead of him.

22.     At the time he was told he was replaced by Ms. Kenon, Mercanti managed the photojournalism of 11 staff photographers and a regular group 5 freelance photographers who are assigned by the job.  All staff members except for one shot video and Mercanti coordinated and edited their videos.

23.     Mercanti attended two daily news meetings to plan coverage and discuss what each department -- news, features, business, health & science and sports -- was offering for publication for newspaper and the website. The morning meeting determined what they were likely to cover that day and the afternoon meeting was to review which of the stories was potentially page one worthy.

24.     During the week, Mercanti attended a Tuesday meeting to plan the Sunday newspaper and two long term projects meeting for more involved and ambitious news efforts.  Under Mercanti's management, his photo staff covered about 100 assignments a week from all the newsroom departments. Mercanti controlled and shaped the eventual online top quality visual report of the newspaper.

25.     Defendants claimed that Ms. Kenon was hired to replace Mercanti to "explore the new visual possibilities created by Arc."  Again, this had been ongoing under Mercanti's management.

26.     ARC is a newsroom platform designed by the Washington Post which integrates newspaper and online content gathering to newspaper and website publishing and archiving.  It is an all-in-one platform that makes it much easier to attach stories, photos image galleries and video to online production.  Prior to the acquisition of ARC, three completely different platforms were utilized to do the work that can be done with ARC on a single platform.

27.     Defendants purchased ARC in 2018 while Mercanti managed the department and he along with the whole newsroom began learning it together.

28.     According to Defendants, Ms. Kenon was hired to "consolidat[e] our video resources into a single team." Again, this was done and being done by Mercanti.

29.     When Mercanti took over both departments in 2010, the papers were producing substantial amounts of video. Then, because online readers were not watching it, the decision was made to drop video. Since around 2013, Mercanti and his staff were shooting video on the very popular Craig LaBan restaurant reviews and not much else. It was all the readers were consistently watching. Meanwhile, on facebook, videos with subtitles became popular to allow people to watch video at work without sound.

30.     Beginning in around 2015, Mercanti was part of a new video strategy when it was decided to use video to supplement the regular online storytelling for major stories. For example, Mercanti and his staff used video interview clips of the sexual abuse victims during the recent national drum corp band stories. They did the same on the priest abuse stories. It allowed the reader to either read through the text or see and hear it directly from the victim. Mercanti assigned, coordinated and supervised the video taken by the staff and it was extremely successful.

31.     Defendants also claimed the Ms. Kenon was hired to "develop the video strategy."  Mercanti had already been a part of strategizing for video as described above for years.

32.     Defendants claimed that Ms. Kenon was hired to "elevate the profile of visuals across all platforms."  Mercanti's staff was already the producer of quality content.  If their visuals were used in the newspaper, website or social media, the quality continued through all these platforms.  Mercanti hired and nurtured this staff, maintaining continual excellent photo and video production through the years.  He elevated the profile of visuals across all platforms and was always looking for ways to improve.

33.     These facts demonstrate that Ms. Kenon, at the approximate age of 40, was hired to replace Mercanti at age 66 -- and this, despite the tremendous superiority of Mercanti's qualifications and achievements relative to Ms. Kenon's.

34.      This is a classic case of a corporation weeding-out an older employee by firing him with the purported justification of eliminating his position, and then promptly assigning a younger employee to perform the responsibilities that the older employee had performed and was significantly more qualified to perform.

35.     Mercanti's age was a determinative and/or motivating factor in Defendants' termination of his employment.

36.     Defendants' discriminatory actions were willful, reckless and outrageous.

37.     As a result of Defendants' discriminatory actions, Mercanti has suffered loss of compensation, emotional distress, mental anguish, loss of dignity, and substantially diminished earning capacity.

38.     Defendants' discriminatory actions violate the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA").

39.     On June 28, 2019, Mercanti filed a Charge and Complaint of discrimination setting forth the foregoing claims of age discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was cross-filed with the Pennsylvania Human Relations Commission ("PHRC").

40.     The Defendants did not respond to Mercanti's Charge and Complaint with the EEOC or the PHRC.

41.     On November 5, 2019, the EEOC issued its Determination finding reasonable cause that the unlawful employment practices occurred.

42.     The EEOC has not issued a notice or right to sue, but more than a year has passed since Mercanti filed his Charge and Complaint of Discrimination.

43.     This Court has jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1367.

WHEREFORE, Plaintiff respectfully requests the following relief in light of

Defendants' violations of the ADEA and PHRA:

      (a)     Back pay pursuant to the ADEA and PHRA;

      (b)     Reinstatement to his former position with Defendants or, if

reinstatement is not feasible, front pay in lieu of reinstatement for a period of at

least 15 years, pursuant to the ADEA and PHRA;

      (c)     Liquidated damages pursuant to the ADEA;

      (d)     Compensatory damages pursuant to the PHRA;

      (e)     Attorney's fees and costs pursuant to the ADEA and PHRA;

      (f)     Interest on all sums to be paid;

      (g)     Injunctive relief enjoining Respondents from subjecting him to

discrimination and/or retaliation pursuant to the ADEA and PHRA;

      (i)     Such other relief as may be just and proper.

Respectfully submitted,

/s/ Edward S. Mazurek
Edward S. Mazurek (PA I.D. 50278)
THE MAZUREK LAW FIRM, LLC
717 S. Columbus Blvd.
Suite 516
Philadelphia, PA 19147
267.243.3393
emazurek@mazureklawfirm.com

Attorney for Plaiuntiff,
Michael Mercanti